BENJAMIN C. RIVES et al. *v.* JAMES WEAVER, Administrator, &c.

1. MAINTENANCE: CHAMPERTY.—The officious intermeddling by a person, in a suit which does not belong to him, by maintaining or assisting a party with money, to prosecute or defend it, tends to keep alive strife and contention, and perverts the remedial process of the law into an engine of oppression; and is, therefore, against public policy, and will not be tolerated.

2. SAME: CHANCERY.—Equity will not entertain a bill tainted with champerty. A court of equity regards the substance and not the forms of things, and will not, therefore, entertain a suit which, though brought in the name of a party who has a right to sue, has been instituted and is being prosecuted in violation of the rules of law prohibiting maintenance and champerty.

3. SAME.—Sale of personal property adversely held, champertous. An assignment or sale of personal property in the adverse possession of a third party, where the assignee knows that he cannot acquire or enjoy the fruits of his purchase

Rives et al. *v.* Weaver, Admr.

except by litigation, is champertous, and confers no right to the property or authority to sue for it, as against the adverse possessor.

4. SAME: CHANCERY: CHAMPERTY BY ADMINISTRATOR FOR HIS OWN BENEFIT: CASE IN JUDGMENT.—S. R. died in 1837, in possession of the slaves in controversy. In 1839, the slaves went into the possession of the defendant, who claimed them as his own, under a bill of sale executed by S. R. in her lifetime. In 1843, a portion of the distributees of S. R. brought an unsuccessful action at law against the defendant for the recovery of the slaves. Afterwards, three of the four distributees assigned their interest in the slaves to W. A. R., the remaining distributee, and the complainant, jointly; and soon thereafter, in 1848, the complainant obtained letters *ad colligendum* on S. R.'s estate; and, in that capacity, brought this suit for the recovery of the slaves. After the institution of the suit, in order to get the benefit of W. A. R.'s testimony, he procured an assignment from him of his interest in the slaves. Both before and after the institution of the suit, the complainant stated he was deeply interested in it. Held, that the presumption was, that S. R. owed no debts requiring an administration on her estate; and that it appeared that the complainant had procured letters *ad colligendum*, and was prosecuting this suit in his trust capacity, for his individual benefit, and to enable him to reap the fruits of his champertous assignments from the heirs, and that the bill would therefore be dismissed.

APPEAL from the District Chancery Court at Fulton. Hon. James F. Trotter, vice-chancellor.

The facts necessary to be stated will be found in the opinion of the court.

The arguments of counsel in this court are quite voluminous, and relate mostly to the Statute of Limitations and other questions in the record, and not determined upon in the opinion of the court. Only the points made and authorities cited by them on the question of champerty will be set out.

*Reynolds* and *Kinyon*, for appellants,

Cited and relied on the following authorities, to show that the assignments were champertous, and that the bill should therefore be dismissed. *Stevens* v. *Bagwell*, 15 Ves. Jr. 139; Story's Eq. §§ 1040, b; 1049; *Baker* v. *Whiting*, 3 Sumn. 475.

*Yerger* and *Rucks*, on same side.

The bill is plainly obnoxious to the charge of champerty. In

August, 1848, Dorcas sold her claim to the complainant and William A. In September, 1848, eleven years after the death of Sarah Robinson, complainant took out letters of administration *ad colligendum.* He was no creditor, and had no connection with the estate, till he purchased the claim of Dorcas. He has since bought the claim of William A. He stated to A. J. Kincaid (see Record, p. 214) that if he lost this suit, he would lose a great deal of money, as he was largely interested; and it does not anywhere appear that the estate of Sarah Robinson has a creditor in the world. The whole case, in fact, shows, that the complainant, a stranger to this affair, has bought up this claim against the defendant for the express purpose of bringing this suit; and had his witnesses, William A. and Dorcas, from whom he bought, so well trained and drilled, that, on cross-examination, they refuse to testify the consideration he paid.

The case clearly falls within the rule of equity, which refuses to lend its aid to parties who seek to enforce claims acquired by champerty and maintenance. See Story's Eq. secs. 1048 to 1054.

*O. Davis* and *H. R. Miller*, for appellee.

The first ground of defence made by Mr. Kinyon, in his brief, is champerty.

This court has decided that, unless the common law offence is clearly made out, the defence of champerty cannot be sustained. 7 S. & M. 130.

It is contended that the common law offence has not been proved.

The thing sold in this instance, is the distributive shares of William A. and Dorcas Robinson, in the estate of their mother.

The thing in controversy, is certain named specific slaves. It is not pretended, nor is there any proof showing that these witnesses ever had any special claim, or set up any title to these slaves, only as belonging to the general estate of their mother. The thing bought by Weaver may or may not embrace these slaves. That depends upon the manner in which the estate of Sarah Robinson is ·finally settled up. They are first liable to the payment of debts, then to specific legacies. It is in proof that there is a will.

A distributive share was sold; there was no litigation pending, about a distributive share.

There could be no champerty in a sale by distributees, because there could be no adverse possession as against them.

The title of personal property of an intestate, vests alone in the administrator. See *Marshall* v. *King*, 24 Miss. R. 85.

Even if there were champerty in the contract between Weaver and the Robinsons, the defence could only be made when he (Weaver) brings a suit to recover the thing he purchased of them,—their distributive shares. Here he is suing in his representative capacity, as a trustee for creditors, legatees, and distributees.

We have no statute on the subject of champerty and maintenance, and the common law offence must be made out by proof, before the court can notice it.

Most of the English cases are based upon the statute of 32 Henry VIII, which prohibits the buying or selling of pretended rights or titles.

There is no pretence that the sale by William A. and Dorcas Robinson was not absolute, or that there was any agreement to divide the thing recovered. There cannot, therefore, be any champerty in the case.

Is there any pretence that Weaver, as *administrator ad. col.*, for the purpose of stirring up litigation and strife, has encouraged others to bring an action which they have no right to bring? Even if Weaver was suing in his own right, and for his own benefit, the facts would not amount to maintenance. See 2 Story's Eq. Jur. § 1048, and note 2; § 1049, note 1.

"The doctrine of maintenance applies only to cases where there is an adverse right, claimed under an independent title, not in privity with that of the assignor or seller, and not under a disputed right, claimed in privity, or under a trust for the assignor or seller." See note 2, above referred to, and Story Eq. Jur. vol. 2, §§ 1050, 1051, 1052, 1053, 1054, and note 1 to § 1050.

"A *cestui que trust* may lawfully dispose of his trust estate, notwithstanding his title is contested by the trustee." 2 Story's Eq. Jur. § 1050 and note 1.

On the first point: Moore's executors do not claim an "adverse right under an independent title;" but, on the contrary, they claim "under a disputed right, claimed in privity, or under a trust for

the sellers," William A. and Dorcas Robinson. Both parties claim to derive their right from the same source,—Sarah Robinson.

On the second point: Moore was merely trustee for the heirs or devisees of Sarah Robinson, and William A. and Dorcas might lawfully sell their equity of redemption.

Here there was an absolute sale, for a consideration in nowise dependent upon the result of any litigation. See 2 Story's Eq. Jur. § 1050.

Weaver did not "undertake to pay any costs, or make any advances beyond the mere support of the exclusive interest which he acquired."

The ancient rule of law on this subject is said, in Addison on Contracts, 307, to have "evaporated to a mere shadow."

A mortgagor may assign his equity of redemption. 2 Story's Eq. Jur. § 1040 g, and note 5; *Prosser* v. *Edmonds*, cited in note 1, 2 Story's Eq. Jur. § 1050; Ib. § 1052.


*F. Anderson,* on same side.

The doctrine of champerty and maintenance is set up in two points of view: 1. To show that complainant has no right to sue; and 2. To show that the testimony of William and Dorcas Robinson was not competent.

1. There is clearly no champerty or maintenance. The thing assigned by the Robinsons was their interest in their mother's estate. The thing in controversy is certain specific negroes. The complainant is not suing in virtue of those assignments, but in virtue of his right as collector; and whether the assignments to him are valid, or void for champerty, his right of suit is the same, since he claims not in his own right, but as administrator.

The right, title, and interest of the Robinsons in their mother's estate, is not disputed by any one, though the value of that estate may be affected by this litigation.

This court has said, that in the absence of any statute, the common law offence must be clearly made out. *Sessions* v. *Reynolds*, 7 S. & M. 130.

What the common law offence is, may be seen in the second and fifth volumes of Bacon's Abridgment, under the title of Champerty

and Maintenance, and other elementary works. 2 Bacon's Abr. title Champerty; 5 Ib. title Maintenance.

They are the unlawful intermeddling in a suit, in the one case for land, and in the other for personalty, by one no ways concerned or interested in the matter.

That the doctrine here is not applicable, is clear. All the parties charged with champerty clearly were interested in the suit. The complainant, as the representative of the estate, clothed by law with the duty and power to collect it; and the other two, the Robinsons, being clearly interested as distributees. But on this point, whatever view the court may take, it cannot affect the complainant's right to recover, since the effect of champerty or maintenance would only be to make void the contracts of assignment between the Robinsons and himself; but still it would be his duty and right to collect the estate for the persons ultimately interested, and he is the only person who can so collect it. *Marshall* v. *King*, 24 Miss. 85.

The above reasons and authorities will also show that, as the assignments were not void for champerty, the testimony of the Robinsons was competent. It was a dealing between parties interested in the matter, and although such a contract might be voidable as between the administrator and distributees, it is only at this instance and time they recognize it as valid and binding. On this point, see brief of O. Davis, Esq., and the following authorities: 2 Story's Eq. Jur. §§ 1048, 1049, n. 1, 1050, 1051, 1052, 1053, 1054; *Vardeman* v. *Sample*, Opinion Book.

It is but the ordinary case of persons interested in a litigation, divesting themselves of that interest for the purpose of making themselves competent witnesses.

It is said that the complainant has instituted the suit for his own benefit. In answer we say, if the contracts between himself and the Robinsons are valid, to that extent the suit is for his benefit; but if they are valid and legal, there is no reason he should not sue for his own benefit. If they are not valid, then he is suing for the benefit of the distributees and creditors, if there be any, or for the benefit of the will.

But, in fact, he is suing as administrator, and the only question is, whether as such he has the right to recover? Whether, when

he does recover, he or the distributees, or the creditors, or the executor of Sarah Robinson's will, shall be entitled to the property, are questions which cannot arise in this court and in this way.    They are questions for the Probate Court.

HANDY, J., delivered the opinion of the court.

This was a bill filed by the appellee, in the District Chancery Court at Fulton, against the appellants as the executors of Reuben Moore, alleging in substance that, in the year 1832, in the State of Tennessee, Sarah Robinson executed to one Lee a mortgage upon two slaves, Harriet and Charlotte, to secure the payment of two hundred dollars, money loaned; that in the same year Reuben Moore paid to Lee the sum of money, and took an assignment of the mortgage, and about the same time married the daughter of Sarah Robinson; that in January, 1833, Moore gave up the mortgage to Sarah Robinson, who thereupon executed to him a bill of sale, absolute on its face, for the two slaves above mentioned, and another slave named Malinda, the consideration of which was stated on its face, to be love and affection for him, and the sum of two hundred dollars; which bill of sale, though absolute on its face, is alleged to have been intended as a mortgage; that, in the year 1833 or 1834, William A. Robinson, the son of Sarah Robinson, had a settlement with Moore, and gave his note for the money due him by Sarah Robinson in payment thereof, and that Moore then gave up the bill of sale, and surrendered the possession of the slaves to Sarah Robinson or to Wm. A. Robinson, on her behalf; that Sarah Robinson afterwards made a will disposing of the slaves, but not to Moore, and that he obtained possession of the will, and still retains it; that, in 1834, Moore and Sarah Robinson removed from Tennessee to Pontotoc, in this State, where they lived together until the year 1836, when Sarah Robinson left him and removed to Yazoo county, where she resided until her death, in September, 1837, having, in February, 1834, sent her son, William A. Robinson, with the slaves, to that county, and they remained in her possession there until her death; that after her death, Moore and his wife removed to Yazoo county, and lived with Wm. A. Robinson until the death of Mrs. Moore, in September, 1838, and in 1839 that Moore got possession of the slaves from Wm. A. Robinson, and removed them

to Tishemingo county, where he has had them in possession ever since, and has claimed title to them.

The appellee obtained *letters ad colligendum* from the Probate Court of Yazoo county, on the estate of Sarah Robinson, at September term, 1848, and thereupon filed this bill, as administrator *ad colligendum*, alleging that the bill of sale, under which Moore claims title, was but a mortgage, that the debt secured by it has been fully paid, and praying that it may be decreed to be cancelled; and offering to redeem, if anything is due, by paying principal and interest.

The answer denies the material allegations of the bill, and claims title in Moore to the slaves, under the bill of sale; and, upon the hearing, a decree was rendered for the appellee, according to the prayer of the bill, from which the executors of Moore have taken this appeal.

Several grounds of error are urged in behalf of the appellants; but as one of these grounds is decisive of the case, in our view, we deem it necessary to consider that only.

That objection is, that the claim of the appellee, as it is presented by the record, is void for champerty, and cannot receive the sanction of a court of equity.

It appears, by the record, that, in August, 1848, Weaver (who was a stranger to the estate of Sarah Robinson, and not interested in it), in conjunction with William A. Robinson, received an assignment from three of the four distributees of Sarah Robinson, of their shares of the estate; and, in September, 1848, that he obtained *letters ad colligendum* upon the estate, and brought an action at law in October, 1848, for the slaves, in which he was unsuccessful; and that, after the filing of this bill, he obtained an assignment of the interest of William A. Robinson, in order to have the benefit of his testimony as a witness in this case. He stated, before the institution of the suit, that if he gained it he would be greatly benefited; and if he lost it, that he would lose a considerable sum of money; and that he was deeply interested in it. It further appears, that Moore had had possession of the slaves, claiming title since 1839; and that, in 1843, William A. Robinson and Dorcas Robinson, two of the distributees, brought suit against him to recover them; that Sarah Robinson, in her lifetime, had made a

will, leaving the slaves to be free; and it does not appear that there were any debts against her which the slaves were required to pay.

Under these circumstances, it must be presumed, that there were no creditors, and that the administration was not necessary to pay the debts of Sarah Robinson; for two of the distributees, as far back as 1843, had sued to recover the slaves. What, then, was the necessity for the appointment of an administrator? If there were no debts, and the slaves were not bequeathed as legacies, the distributees were competent to sue in their own names. But to that course there was a serious obstacle,—the adverse possession of Moore would have been a bar to the action. It appears that they made an unsuccessful trial of that course in 1843; and no further effort appears to have been made to assert their claim, or to disturb Moore's possession, until the appellee acquired an interest in the slaves. No suit could be maintained by him in his own right, either separately or jointly, with the other distributees, because the same objection would be encountered then which stood in the way of a suit by the distributees in their own names. Hence, the necessity of taking out letters upon the estate, in order to obviate the objection of the Statute of Limitations.

In view of the adverse possession of Moore for so great a length of time, and of the unsuccessful effort of the distributees to assert their title, Weaver thought fit to purchase an interest in their disputed claim. He must have made the purchase with a full knowledge that he could never receive any benefit from it except by litigation; and accordingly he immediately prepared for the controversy, by becoming administrator *ad colligendum.* He had purchased a disputed title, and took the step which he thought would clothe him with the authority to make it available, and to obviate a serious obstacle. If the slaves were really the property of Sarah Robinson, there being no debts, his letters were wholly unnecessary to assert the rights of the distributees; but they were very important to enable him to realize the fruits of his speculation in a disputed title, and they could have been resorted to by him for no other purpose. Being a total stranger to the estate, he thought proper to engage in a speculation in a pretended title which must necessarily result in litigation; and, in order to accomplish the end for himself and his associate, he assumed the character appointed

Rives et al. *v.* Weaver, Admr.

by the law for the assertion of just rights, but which cannot be allowed to be perverted to sustain claims which are unconscientious, or against the policy of the law. Such a course cannot be sanctioned by a court of equity.

The policy of the law is, that an officious intermeddling by one in a suit which does not belong to him, by maintaining or assisting a party with money, or otherwise, to prosecute or defend it, is not to be tolerated. It is said to be against public justice, because it keeps alive strife and contention, and perverts the remedial process of the law into an engine of oppression. 4 Blacks. Comm. 134. And it is well said that the reason of this policy is, that no encouragement should be given to litigation by the introduction of parties to enforce those rights which others are not disposed to enforce. 4 Kent's Comm. 447, note. To permit a party to purchase an interest in property held by an adverse claim and possession, directly with a view to litigation, and to clothe himself with a character provided by the law for the enforcement of just and legal rights, and avail himself of such character to realize his illegal design, would be to allow a manifest perversion of the forms and remedies of the law, and in contravention of sound policy and established principle.

The circumstances of this case show plainly that the object of the appellee, in taking upon himself the character of collector, was not to advance the ends of legitimate administration, but to get possession of the property to subserve the purposes of his speculation. It is a clear case of officious intermeddling with the estate, and an abuse of the forms allowed by law, to his own private benefit; and though in form the suit is brought by one clothed with legitimate authority, yet a court of equity, which considers the substance and not the form of the proceedings, will regard it as a mere suit for his individual advantage, by one who is substantially an assignee of the interests sought to be recovered, in his formal and colorable character as administrator.

If it be said that, notwithstanding such be the object of the proceeding, yet he would be accountable for the property under the authority of the Probate Court, and the distributees would be entitled to recover their interests, yet the rights of the party must be determined by the attitude in which he presents himself and asks

relief; and if it appears that the proceeding is founded in a collusive and illegal purpose of using the forms and remedies of the law, to enable the party to reap the fruits of a speculation in litigation, his conduct is a fraud upon the law, and a court of equity will not consider whether good may not come from it, but will refuse to lend any assistance to his illegal design. The court cannot act upon the assumption that the distributees will act in bad faith and repudiate their assignments to him, and thus that he will be debarred of the benefits of his speculation. It is sufficient to exclude him from any aid, that he presents himself in such a manner, as to show that he is seeking to pervert the forms and remedies of the law to his own private benefit, and, under color of an official character, to appropriate the property of an estate to his individual advantage, in furtherance of a speculation entered into by him for that purpose.

We are, therefore, of opinion that the appellee was not entitled to the relief sought and decreed, and that the decree must be reversed, and the bill dismissed.